**UNITED STATES of America ex rel. Thomas J. POULTON, M.D., Plaintiffs,**

v.

**ANESTHESIA ASSOCIATES OF BURLINGTON, INC., Associates in Practice Management, Robert Dunn, Fletcher Allen Health Care, Fletcher Allen Provider Corp., University of Vermont, University Health Center, Inc., University of Vermont College of Medicine, Surgical Associates Foundation, Defendants.**

No. Civ. 2:99–CV–269.

United States District Court, D. Vermont.

March 3, 2000.

Marc S. Raspanti, David M. Laigaie, Miller, Alfano & Raspanti, P.C., Philadelphia, PA, Howard Bruce Klein, Law Offices of Howard Bruce Klein, Philadelphia, PA, Richard Thomas Cassidy, Hoff, Curtis, Pacht, Cassidy & Frame, P.C., Burlington, VT, for Thomas J. Poulton, M.D., United States of America ex rel., plaintiff.

Joseph Robert Perella, AUSA, Office of the United States Attorney, Burlington, VT, for United States of America, intervenor-plaintiff.

Marc B. Heath, Downs, Rachlin & Martin, PLLC, Burlington, VT, for Fletcher Allen Health Care, defendant.

Karen McAndrew, Dinse, Knapp & McAndrew, P.C., Burlington, VT, for Associates in Practice Management, Robert Dunn, defendants.

### OPINION AND ORDER

SESSIONS, District Judge.

In this qui tam case, Dr. Thomas J. Poulton, M.D. ("Dr. Poulton," "relator," "Plaintiff"), relator in the above captioned matter, moves for attorneys' fees and costs (paper 64), pursuant to 31 U.S.C. § 3730(d)(1). Defendant Fletcher Allen Health Care ("FAHC") opposes the motion on several grounds (paper 66), which are enumerated and addressed below. For the following reasons, the Court GRANTS in part Plaintiff's motion for attorneys' fees and costs (paper 64).

### Factual Background

In 1995, Dr. Poulton was offered the Chairmanship of the Department of Anesthesiology for the University of Vermont ("UVM") College of Medicine, the Presidency of Anesthesia Associates of Burlington ("AAB"), and the Health Care Physician Leadership for Anesthesiology at FAHC. He accepted the positions, and his family moved from Kansas to Burlington.

Shortly after his arrival in Burlington, Dr. Poulton noticed billing irregularities at AAB. Although he brought these matters to the attention of senior management of FAHC, UVM, and the AAB executive committee, they failed to address his concerns. Ultimately, he brought the matter to the attention of the federal government and filed this suit, claiming that the defendants violated the False Claims Act, 31 U.S.C. §§ 3729–3733, and that they retaliated against him in violation of 31 U.S.C. § 3730(h).

Two and one half years after Dr. Poulton filed his suit, defendants agreed to settle. During those years, Dr. Poulton and his counsel worked closely with U.S.

Attorney Charles Tetzlaff ("Mr. Tetzlaff"), assisting in the government's federal health care fraud investigation. As a result of Dr. Poulton's suit, the government has recovered to date $3.2 million dollars, and will shortly recover an additional $150,000. FAHC paid nearly 90% of the total settlement to the government, while AAB paid under 6%, and Mr. Dunn, the third defendant, was held responsible for 4.5% of the total settlement.

The government has approved a twenty-four percent relator's share to Dr. Poulton, which is intended to award the relator and counsel based on "the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). The maximum share available in cases where the government has intervened is twenty-five percent.

Of the three entities involved with the settlement, FAHC, AAB, and Mr. Dunn, Plaintiff argues that two are financially insolvent for purposes of this matter. AAB is a defunct corporation wholly lacking in corporate assets, and Mr. Dunn's assets are held in pension funds or in his wife's name. When settling Dr. Poulton's retaliation claim against AAB, AAB received a full release from liability, including attorney's fees under 31 U.S.C. § 3730(d)(1).

Dr. Poulton was represented in this matter by two separate law firms in Philadelphia, Miller, Alfano & Raspanti, P.C. ("MAR") and the Law Offices of Howard Bruce Klein. Dr. Poulton's brief claims that despite an extensive search of attorneys in the Burlington area, he was unable to find appropriate representation. Particularly, he could not find an attorney who had handled both health care fraud and qui tam cases. He further claims that those few attorneys whose experience was commensurate with the level required for this litigation had to decline due to prior representation of one or more of the defendants.

At the time of the filing of the Motion for Attorneys' Fees and Costs, fees and costs totaled $342,965.72, which are as follows:

| | Fees | Costs | Total |
|---|---|---|---|
| Miller, Alfano & Raspanti, P.C. | $240,902.50 | $17,917.02 | $258,819.52 |
| Howard Bruce Klein | $ 80,537.50 | $ 3,608.70 | $ 84,146.20 |
| | | Total | $342,965.72 |

## Discussion

■ In accord with the Federal False Claims Act, a successful relator "shall also receive an amount for reasonable expenses which the Court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1). The lodestar approach, which involves "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate," *G.M., ex rel. R.F. v. New Britain Bd. Of Educ.,* 173 F.3d 77, 84 (2d Cir.1999) (quoting *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)), is typically used in qui tam actions.

■ The initial burden of proof that the fee is reasonable falls on the relator, who must submit evidence regarding the number of hours expended and the hourly rate claimed. *See Hensley v. Eckerhart,* 461 U.S. 424 at 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The party opposing the fee award then has the burden of challenging the reasonableness of the fee requested [. . .]" *United States ex rel. Doe v. Pennsylvania Blue Shield,* 54 F.Supp.2d 410 at 413–14 (M.D.Pa.1999).

The relator argues that counsel expended a reasonable number of hours, billed within the prevailing market rate, and that the lodestar figure should be upwardly adjusted to recognize the risk inherent in this litigation. The Defendant opposes each of these characterizations, and seeks reductions in the fee amount on a variety of grounds, including vague billing records, excessive travel time, duplicative charges, time spent on negotiating relator's percentage and non-meritorious claims, and billing for Lexis and publication charges. The Defendant further argues that the fees and costs should be divided equally between the three defendants, and that the

billing rate of $250 for attorneys and $195 for associates exceeds Vermont billing standards. The relator has agreed that some of these reductions are warranted in his Reply Brief.

### 1. *Percentage of Fees and Costs to be Paid by Defendants*

■ "The allocation of fee liability is a matter committed to the district court's discretion and will not be disturbed unless the determination evidences an abuse of discretion." *Koster v. Perales,* 903 F.2d 131, 139 (2nd Cir.1990). Courts have, in their discretion, apportioned costs and fees across parties based on a variety of factors, such as the percentage of settlement paid by each party or the ability of parties to pay. *See, i.e., Soler v. G & U, Inc.,* 801 F.Supp. 1056, 1067 (S.D.N.Y.1992), *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 960 (1st Cir.1984). In cases involving a single, indivisible harm, courts have assigned all costs and fees to one party. *Koster,* 903 F.2d at 140. The Second Circuit advises in apportioning fees the Court should "make every effort to achieve the most fair and sensible solution that is possible." *Id.* at 139.

Dr. Poulton requests that the entirety of fee and cost reimbursement be awarded against FAHC, while FAHC argues that the proper apportioning of liability requires division in thirds between FAHC, AAB, and Mr. Dunn. In support of this methodology, FAHC's brief distances itself from the majority of Surgical Intensive Care Unit billing, which was at the heart of the health care fraud investigation and settlement.

■ However, FAHC paid nearly 90% of the total settlement to the government, while AAB paid under 6%, and Mr. Dunn, 4.5%. In holding each party responsible on the basis of these percentages, 90% of the fees and costs for Dr. Poulton's representation should be provided by FAHC. Although the relative ability of each defendant to pay is not the determining factor in this case, consideration of ability to pay further establishes FAHC as the best candidate for absorbing the majority of the fees and costs; AAB is currently a defunct corporation with no corporate assets, and Mr. Dunn assets are effectively judgment proof. Furthermore, AAB has been subsumed by FAHC, the physicians of AAB are now employees of FAHC, and in the past Mr. Dunn has served as a consultant to FAHC. Finally, the Court takes into consideration the Government's representation in a letter from Mr. Perella dated February 23, 2000 that it "has maintained throughout this litigation that FAHC is liable for the improper billings at issue regardless of what entity or individual is most culpable." For all the foregoing reasons, FAHC is held liable for 90% of the fees and costs attributed to Dr. Poulton's representation.

### 2. *Value of Relator's Counsel in Qui Tam Action*

■ FAHC argues that Dr. Poulton's brief amplifies the value of his counsels' role in the prosecution of this case. Particularly, they argue that government attorneys pursued the PATH or Nutrition claims upon which a large part of the settlement was based with no assistance from private counsel. However, there is strong evidence that the government found Dr. Poulton's attorneys to be very valuable throughout the investigation. Dr. Poulton's brief asserts that United States Attorney Charles Tetzlaff regularly lauded the assistance provided by Plaintiff's lawyers. Furthermore, the evidence shows that Dr. Poulton's attorneys were actively involved with work on the PATH claims from the beginning of this suit. Much of the proffers made by the relator with the assistance of counsel dealt directly with the PATH claims. And while Dr. Poulton did not specifically provide evidence regarding the nutrition claims, the government came to know of the nutrition billing irregularities through Dr. Poulton's allegations concerning Surgical Intensive Care Unit billing errors.

More important, the government offered Dr. Poulton a twenty-four percent relator's share of the settlement. Given that the maximum available under law is twenty-five percent, the award evinces the government's acknowledgment of the important role Dr. Poulton and his counsel played in the investigation of this case.

Finally, this case resulted in a global settlement. As discussed later in this opinion, Defendant's assertion that some of the claims were "unsuccessful" has no bearing on the valuation of Dr. Poulton's attorneys' contributions to the outcome of this case. Settlement does not determine the relative merits of dismissed versus retained claims; neither the dismissal of certain claims through the settlement agreement nor FAHC's denial of liability on all claims reflect negatively on relator's counsel. Thus, the fee will not be reduced for alleged overstatement of the impact of relator's counsel on this case.

### 3. *Reasonable Hourly Rates and the Prevailing Market*

■■■ The reasonableness of the rate charged is determined by its congruity with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In exercising its discretion, this Court must consider "the prevailing marketplace rates for the type of work and the experience of the attorneys." *Cabrera v. Jakabovitz*, 24 F.3d 372, 392 (2d Cir.1994). "The 'prevailing community' this Court should use in setting the lodestar, is the district in which the court sits." *Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148 (2d Cir.1994).

Dr. Poulton claims that after a diligent search, he was unable to locate Vermont counsel whose skill level, experience, and lack of conflict presented adequate representation for this case. He then selected representation from two law firms in Philadelphia which had experience with both qui tam and health care fraud cases. By seeking counsel from a major city outside of Vermont, the hourly rate billed for representation in this matter exceeded Vermont's prevailing market rate for such cases of $200 per hour for attorneys and $90–$120 per hour for associates.

The Court does not believe that there are no attorneys in the State of Vermont capable of handling a health care fraud qui tam case. As noted in Defendant's Opposition, David Shaw, Esq., an attorney licenced to practice in the state of Vermont, filed a Qui Tam complaint in 1995 through which a $3.5 million settlement was reached. Several other attorneys in the state of Vermont offered affidavits which attest to their ability to handle complex litigation, all at or below the rate of $200 per hour.

More important, it does not appear that Dr. Poulton performed a diligent search for attorneys beyond the Burlington area. Had he done so, he would have likely come across attorneys capable of representation without conflict on the grounds of past representation of the defendants in this action. The assertion that Dr. Poulton must establish that every single attorney in Vermont was incapable of representing him before hiring his Philadelphia counsel is a gross overstatement. However, it does appear that Dr. Poulton's failure to search beyond the Burlington area naturally produced a lack of qualified attorneys who were not in conflict. Therefore, the Court rejects the claim that locating and retaining qualified lead attorneys in the state of Vermont in this matter would have placed an undue burden on Dr. Poulton.

■■ Although the Court believes that many members of the Vermont bar would have been capable of handling this case and could have been located through a search that stretched beyond the Burlington area, it is also clear that retention of out-of-state counsel was feasibly necessary for the purpose of consultation on the more complex health care fraud and qui tam aspects of this case. Thus, the hourly rate of $225 per hour for attorneys and $160 for associates is suitable to both Ver-

mont standards and the complexity of this case, and is found to be appropriate in this case. Based upon the Court's review of the experience of Klein and Raspanti, each shall be compensated at a rate of $225 per hour. Associate's work shall receive $160 per hour.

### 4. Reasonableness of Hours Expended

#### a. Vague Entries

FAHC has requested this Court to reduce the loadstar for "vague and clustered" entries which it claims appears throughout the billing records. Although FAHC has brought a few of these allegedly vague entries to the Court's attention, a list of specific entries and the corresponding amount of reduction requested has not been offered. Plaintiff's counsel notes that the specific entries challenged by FAHC amount to a mere 1.75% of the requested fees.

 Furthermore, those entries listed as vague and non-descriptive by FAHC are taken out of context. When reviewed in the context of the preceding billing entries, the entries appear quite clear. FAHC has not met its burden of proving that these entries are so lacking in descriptive accuracy that they will be overcharged. Thus, no fee reduction is applicable for vague and clustered billing.

#### b. Unsuccessful Claims

 While reduction of the loadstar is appropriate for hours spent on unsuccessful claims when the case has gone to trial and many claims are found to be not meritorious, such a reduction is not appropriate here. Settlement does not determine which claims are meritorious, and effective work by Plaintiff's attorneys on all claims serves as fuel for productive settlement discussions. FAHC chose to settle Dr. Poulton's fraud claims in exchange for the payment of $3 million to the government, and settled his retaliation claim in exchange for the payment of $400,000. Having made these choices, FAHC cannot now escape fee liability by arguing that certain claims were unsuccessful. Thus, no reduction for unsuccessful claims is warranted.

### 5. Other Fees and Expenses

#### a. Reduced Hourly Rate for Travel Time

 In cases where the travel time was used productively, such as in preparation for meetings in the destination city, no reduction in hourly rates is warranted. Thus, the hourly rate applies. However, non-productive travel time, as admitted by the relator in Mr. Laigaie's trip from Stowe to Burlington, should be reduced by 50%. Thus, the offered reduction of $292.50 is appropriate.

#### b. Fees Related To Retaliation Claim

FAHC argues that those fees related to the retaliation claims were inappropriately charged. Relator's counsel asserts that the billing entries that addressed the retaliation charge were previously removed, but the remaining entries which addressed retaliation primarily included work on the fraud claims and therefore were retained. Four additional entries are considered as relating to the retaliation claim, and are withdrawn by Dr. Poulton, in the amount of $264.00. While maintaining that the rest of the entries relate solely to the fraud claims, Dr. Poulton nonetheless agrees to withdraw an additional thirty percent of the disputed entries by value, which amounts to $2,291.70. This amount is appropriate, as most entries which address retaliation do appear to include some, but not highly significant relationship to the fraud claims. Thus, the total reduction in this area is $2555.70.

#### c. Duplication of Effort

FAHC requests that the fee be reduced for Plaintiff's use of two experienced qui tam law firms. Particularly, FAHC feels that it was unnecessary for both law firms to (1) attend all meetings in Burlington, (2) review, revise, and edit the pleadings, (3) repeatedly meet with Dr. Poulton and re-

view the same documents provided by him, and (4) be actively involved with all settlement negotiations. FAHC characterizes this as inefficient work which should bar duplicative recovery. However, the portion of work considered duplicative by FAHC is indeterminate. Specific portions of the work they would have the Court strike are not specified.

■ In his affidavit, Howard Bruce Klein stated that he sought co-counsel from Miller, Alfano and Raspanti because they are nationally recognized qui tam experts, and had the attorney depth and support staff that he felt the case required. He further claims that due the risk factor and the relative small size of his firm, he felt Mr. Raspanti's assistance was needed in this case. Certainly, in cases of complex litigation such as this one, attorneys rarely work alone. It is not per se unreasonable for two plaintiff's attorneys to review the same piece of correspondence or attend settlement agreements in a multimillion dollar health care fraud qui tam case. To determine whether specific hours were unnecessarily expended by counsel in both firms, the Court would be required to analyze each billing entry for duplicative review by the law firms, and evaluate whether the issue reviewed by both attorneys was sufficiently complex or important for both attorneys to have been involved. Clearly, this burden should fall on FAHC and not the judiciary. Therefore, as FAHC's burden to clarify its objections has not been met, the unspecified opposition to duplicative billing is insufficient grounds for reduction in the fee.

### d. *Excessive Costs*

FAHC claims that several costs billed are not recoverable in fee-shifting cases, namely Lexis billing, the Anesthesia Answer Book Subscription, and photocopying, postage, and other such office costs. Dr. Poulton agrees to the reduction for the Lexis charges, amounting to $390.55, and that fee is stricken. In addition, this court strikes $993.00 paid for the Anesthesia Answer Book Subscription as overhead inappropriate for billing in a fee-shifting case. The total reduction for excessive costs is $1383.55.

### e. *Fees Associated with Negotiation of Relator's Share*

■ The time counsel spent on negotiation of the Relator's share is not appropriately billed to the defendants in this case. Two of the three entries addressing the relator's share are stipulated for a reduction by Dr. Poulton, amounting to $275.00. The third entry, however, does not address relator's share, and therefore is not subject to the reduction. Thus, the total award is reduced by $275.00 to account for time billed in achieving a relator's share.

### f. *Duplicative Billing*

FAHC has brought a singular recorded instance of duplicative billing to the Court's attention. Dr. Poulton acknowledges the error and agrees to the reduction of $390.00.

### 5. *Increasing the Loadstar for Inherent Risk*

■ There is a strong presumption that the loadstar determines the reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). The burden rests on the fee applicant seeking an upward adjustment to show that "such an adjustment is necessary to the determination of a reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 898, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), the plurality reasoned that "it [is] desirable and an appropriate application of the statute to hold that if the trial court specifically finds that there was a real risk-of-not-prevailing issue in the case, an upward adjustment of the lodestar maybe made, but, as a general rule, in an amount no more than one-third of the lodestar." *Id.* at 730, 107 S.Ct. 3078.

■ Plaintiffs' attorneys have offered in affidavit that they believed there was substantial risk involved in taking this case. Furthermore, Plaintiff did make some attempt to secure other counsel without success. The Court is aware that Plaintiff's attorneys have already recovered handsomely through their contingency fee arrangement. However, as the Court also finds that several of the claims raised in this case under the False Claims Act were "real risk-of-not-prevailing issues," an upward adjustment of the loadstar is warranted. Thus, a ten percent upward adjustment is applied to the loadstar.

**6. *Summary of Reductions and Enhancements***

The Court finds that FAHC is liable for ninety percent (90%) of the fees and costs. The appropriate billable rate is $225 per hour for attorneys and $160 for associates. The following reductions are appropriate: $292.50 for unproductive travel time; $2555.70 for fees related to the retaliation claim; $1383.55 for excessive costs; $275.00 for time spent on the relator's share; and, $390.00 for duplicative billing. The total of itemized reductions is $4896.75. Of this amount, $3513.30 (the total excluding excessive costs) must be readjusted prior to reduction to account for the change in billing rate from $250 to $225 per hour and $195 to $160 per hour for associates. Thus, ninety percent of the total fees requested by Dr. Poulton, billed at $225 per hour and $165 per hour for associates, excluding the hours omitted from recovery by this opinion, increased by a multiplier of ten percent, is to be paid to relator's counsel by FAHC. Ninety percent of all costs are also to be paid by FAHC. Further costs and fees accrued since the time of filing of the Motion for Attorneys' Fees and Costs and in the course of defending the motion shall be paid to relator's counsel by FAHC according to the same methodology.

**Order**

Wherefore, the Court GRANTS in part Relator's Motion for Attorneys' Fees and Costs (paper 64). Relator shall prepare a proposed order with current fees and costs within thirty days.