Arthur L. HERBST, Marvin Rosner,
David Zbarz, M.D., et al., Plaintiffs–
Appellees, Cross–Appellants,

v.

James E. RYAN, Attorney General of Illi-
nois and John R. Lumpkin, M.D., Di-
rector of the Illinois Department of
Public Health, Defendants–Appellants,
Cross–Appellees,

and

Jack O'Malley, State's Attorney of Cook
County, Illinois, as class representative
of all 102 Illinois State's Attorneys, De-
fendant–Appellee, Cross–Appellee.

Nos. 95–1611, 95–1733.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1996.

Decided July 26, 1996.

Alexandra M. Jackson, Ross & Hardies, Brenda Swierenga Furlow, Deborah M. Neyens, Sonnenschein, Nath & Rosenthal, Harvey M. Grossman, Colleen K. Connell (argued), Roger Baldwin Foundation of ACLU, Inc., Chicago, IL, for Marvin Rosner, David Zbarz, William Spellacy and Arthur L. Herbst.

Deborah L. Ahlstrand (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for James E. Ryan and John R. Lumpkin, M.D.

Connie R. Barba, Donald J. Mizerk (argued), Office of the State's Attorney of Cook County, Terry L. McDonald, Office of the State's Attorney of Cook County, Federal Litigation Division, Chicago, IL, for Jack O'Malley.

Before CUMMINGS, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

This appeal involves the appropriate allocation of responsibility for attorneys' fees in a civil rights action. In the underlying action, the plaintiffs sought declaratory and injunctive relief against the enforcement of certain amendments to Illinois' Abortion Law.[1] The Attorney General of Illinois, the Director of the Illinois Department of Public Health, and the class of all 102 Illinois State's Attorneys were named as defendants. The district court approved a consent decree proposed by the parties. The plaintiffs, as the "prevailing parties," then successfully petitioned the district court to enter an award of attorneys' fees pursuant to 42 U.S.C. § 1988. The district court assessed the entire fee award against the State of Illinois. The plaintiffs and the Attorney General of Illinois appeal this allocation of liability for the fee award. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. The Underlying Litigation

The plaintiffs in the underlying civil rights action are a group of named Illinois physi-

---

1. The Illinois General Assembly enacted the challenged amendments on June 30, 1984. No executive action was required for the amendments to take effect; the General Assembly had passed the amendments over the veto of the Governor. The following day, the presiding emergency judge of the district court granted the plaintiffs' request for a one-day temporary retraining order enjoining the enforcement of the amendments. On Monday, July 2, 1984, the plaintiffs filed their original complaint.

cians, acting as class representatives on behalf of other physicians desirous of performing abortion services and on behalf of female patients desirous of receiving such services.[2] They commenced this action seeking declaratory and injunctive relief against the enforcement of various amendments to Illinois' Abortion Law of 1975, 720 ILCS 510/1–15. Relief was sought against: (1) the State's Attorney of Cook County, in his official capacity and as the representative of a class of the State's Attorneys from 102 Illinois counties; (2) the Attorney General of Illinois, in his official capacity; and (3) the Director of the Illinois Department of Public Health, in his official capacity. Throughout the litigation, the State Defendants were represented by the Attorney General's Office, and the State's Attorneys were represented by the Cook County State's Attorney's Office.[3]

The underlying case was resolved when the parties proposed, and the district court approved, a consent decree enjoining enforcement of some of the challenged provisions. The plaintiffs filed a petition for attorneys' fees pursuant to 42 U.S.C. § 1988,[4] and the district court referred the petition to a magistrate judge for a report and recommendation. The magistrate judge determined that the plaintiffs were "prevailing part[ies]" for purposes of section 1988 and recommended that the district court award the plaintiffs $233,090.19 in fees and costs. The magistrate judge made the further recommendation that this award be assessed jointly and severally against the State Defendants and the State's Attorneys.

The district court declined to accept the magistrate judge's allocation of liability for the fee award.[5] Noting the absence of Seventh Circuit authority on the question, the district court found helpful the approach of the Fifth Circuit in *Echols v. Parker*, 909 F.2d 795 (5th Cir.1990) that "[a] county official pursues his duty as a state agent when he is enforcing state law or policy." *Id.* at 801. The district court noted that a state is liable for attorneys' fees under section 1988 when a state official is sued in his official capacity. *See Hutto v. Finney*, 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2574–75, 57 L.Ed.2d 522 (1978). It also determined that the Illinois State's Attorneys would have been acting as state agents in enforcing the challenged provisions. Consequently, concluded the court, the fee award should be entered solely against the State of Illinois. Accordingly, the district court entered judgment against the State of Illinois in the amount of $233,090.19.

## B. *The Positions of the Parties*

On appeal, the parties advance three different allocations of liability for the fee award. The State Defendants argue in favor of equal apportionment of the fee award between themselves and the class of State's Attorneys. In their view, the district court erred in failing to assess a portion of the fee award against the State's Attorneys who, as officials responsible for the enforcement of

---

**2.** Contrary to the State's Attorneys' suggestion, the plaintiffs do have standing to challenge the district court's allocation of liability for the fee award. In our view, the plaintiffs' assertion that the allocation would prejudice their ability to collect the fee award states an injury that is sufficient to establish standing to challenge the award. *See Wooten v. Loshbough*, 951 F.2d 768, 769 (7th Cir.1991) ("We may assume that the defendant's activities made it less likely that [the plaintiff] would collect her judgment; and probabilistic injury is enough to establish standing in the Article III sense.").

**3.** Unless otherwise necessary, we shall refer to the Attorney General of Illinois and to the Director of Public Health collectively as the "State Defendants." State's Attorney O'Malley and the class of 102 State's Attorneys will be referred to as the "State's Attorneys."

**4.** 42 U.S.C. § 1988(b) provides that, in federal civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

**5.** The defendants also raised various objections to those portions of the magistrate judge's Report and Recommendation addressing the plaintiffs' status as "prevailing parties" and the calculation of the fee award. The district court overruled the defendants' objections with respect to these matters, and the parties have not pursued them before this court. The sole issue on appeal, therefore, is the district court's allocation of liability for the fee award.

the challenged provisions, also may be held liable for attorneys' fees. *See Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731–34, 100 S.Ct. 1967, 1974–76, 64 L.Ed.2d 641 (1980); *Crosby v. Bowling*, 683 F.2d 1068, 1073 (7th Cir.1982) (noting that "fees can properly be taxed against those whose role is limited to enforcement of regulations that they had no role in promulgating"). According to the State Defendants, the district court erroneously overshot this conclusion and effectively decided which treasury—county or state—should satisfy the State's Attorneys' fee liability.[6] Equal apportionment is appropriate, they conclude, because the State Defendants and State's Attorneys held roughly equal status as defendant enforcement officials and because the two classes of defendants participated equally in the litigation. *See Wilson v. Stocker*, 819 F.2d 943, 945–46, 950–51 (10th Cir.1987) (affirming equal apportionment of fees).

The plaintiffs argue in favor of joint and several liability for the fee award. In their view, joint and several liability best serves the broad remedial purposes of section 1988 and avoids the "uncertain" and "cumbersome" process of collecting a judgment from the State of Illinois. Joint and several liability is appropriate, the plaintiffs assert, because the civil rights violation alleged in their complaint—the threatened enforcement of a constitutionally defective statute—was indivisibly effected by all the defendants, and "liability on the merits and responsibility for fees go hand in hand." *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). The plaintiffs contend that state courts and state indemnification law—not the district court—should provide the framework for "appropri-

ate shifting of financial burdens" related to the fee award. *Venuti v. Riordan*, 702 F.2d 6, 8 (1st Cir.1983).

The State's Attorneys defend the district court's allocation of liability for the fee award. The State's Attorneys contend that, given the nature of the plaintiffs' claim—a challenge to the constitutionality of a state statute that had yet to be enforced by any State's Attorney—the State of Illinois is the proper party to pay the attorneys' fees generated in this litigation. The plaintiffs commenced this action to prevent the State's Attorneys from enforcing state law. When acting in this capacity—the enforcement of state law—the State's Attorneys are state, and not local, officials. *See Ingemunson v. Hedges*, 133 Ill.2d 364, 140 Ill.Dec. 397, 400, 549 N.E.2d 1269, 1272 (1990); *Scott v. O'Grady*, 975 F.2d 366 (7th Cir.1992), *cert. denied*, 508 U.S. 942, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993). Accordingly, the State's Attorneys assert, the district court's allocation of liability for the fee award is proper.

## II

### DISCUSSION

#### A.

Section 1988 provides that a district court, "in its discretion," may award attorneys' fees to the prevailing party in a civil rights action. 42 U.S.C. § 1988(b). Recognizing the fact-sensitive nature of many fee-related determinations, our cases have articulated a "highly deferential abuse of discretion standard for appellate review." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 518 (7th Cir.1993) (quoting *Leffler v. Meer*, 936 F.2d 981, 984 (7th Cir.1991)).[7] A district

---

6. Under Illinois law, each State's Attorney's office is funded by the treasury of the county that it serves. *See* 55 ILCS 5/4–2001, 5/4–3001, 5/4–2003, 5/5–1106. Similarly, all fees, fines and forfeitures collected by each State's Attorney are turned over to the county treasury. *See* 55 ILCS 5/4–2005, 5/4–2006.

7. *See Maul v. Constan*, 23 F.3d 143, 148 (7th Cir.1994) (Flaum, J., dissenting) ("Indeed, in view of the text of § 1988 and the policies behind it, it is not surprising that 'reasonableness' and 'discretion' are the hallmarks of the fee determi-

nation."); *Carston v. County of Cook*, 962 F.2d 749, 753 (7th Cir.1992), *cert. denied*, 506 U.S. 1052, 113 S.Ct. 974, 122 L.Ed.2d 128 (1993); *see, e.g., Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1351 (7th Cir.1995) (reviewing reasonableness of a fee award for an abuse of discretion); *Estate of Borst v. O'Brien*, 979 F.2d 511, 517 (7th Cir.1992) (reviewing award of costs for an abuse of discretion); *Munson v. Milwaukee Bd. of Sch. Directors*, 969 F.2d 266, 269 (7th Cir.1992) (reviewing decision to award fees for an abuse of discretion); *Dixon v. City of Chicago*, 948 F.2d 355, 358 (7th Cir.1991) (reviewing de-

court does not abuse its discretion in awarding fees if reasonable persons could differ over the view that it adopts. *McNabola,* 10 F.3d at 518; *Leffler,* 936 F.2d at 984. The district court is accorded significant deference in fee matters because (1) it possesses "superior understanding of the litigation and [there exists a] desirability of avoiding frequent appellate review of what essentially are factual matters"; (2) the need for uniformity in attorneys' fees awards is not great enough to warrant appellate review of minutia; and (3) the desirability of avoiding "a second major litigation" strictly over attorneys' fees is high. *Spellan v. Board of Educ. for Dist. 111,* 59 F.3d 642, 645 (7th Cir.1995) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)); *see Leffler,* 936 F.2d at 984–85. These same considerations lead us to conclude, as have other courts of appeals, that deferential review of a district court's allocation of liability for a fee award among multiple parties is warranted.[8]

## B.

As the case law of the circuits amply demonstrates, the allocation of liability for attorneys' fees remains an area in which there is no simple formula of universal applicability. *See Council for Periodical Distribs. Ass'ns v. Evans,* 827 F.2d 1483, 1487 (11th Cir.1987); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 959 (1st Cir.1984). A number of different approaches have been advanced for various situations.[9] Because the district courts confront a great variety of circumstances in determining the proper allocation of a fee award, this case does not give us occasion to assess the appropriateness of each approach or, indeed, of combinations of them.[10]

Nevertheless, although the task of determining how the burden of attorneys' fees ought to be allocated does not admit of a single solution, the case law does suggest several guideposts of general applicability that ought to inform the district court's discretion in determining the appropriate allocation for a particular case. First, the district courts ought to consider the broad remedial purposes of the Civil Rights Act and the role that section 1988 plays in effectuating these goals. *See Pulliam v. Allen,* 466 U.S. 522, 543–44, 104 S.Ct. 1970, 1981–82, 80 L.Ed.2d 565 (1984). In enacting section 1988, Congress took the view that private enforcement frequently would be necessary to remedy violations of the civil rights laws and that fee awards provide the necessary encouragement to private citizens to file suit to correct such violations. As we noted in *Charles v. Daley,* 846 F.2d 1057 (7th Cir.1988), *cert. denied,* 492 U.S. 905, 109 S.Ct. 3214, 106 L.Ed.2d 564 (1989), the "overriding goal" of section 1988 is to reimburse, with a reasonable attorneys' fee, "those 'private attorneys general' who invoke and thereby invigorate federal constitutional and statutory rights." *Id.* at 1063; *see Lynch v. Milwaukee,* 747 F.2d 423, 426 (7th Cir.1984) (noting than an award under section 1988 is to be "based on the totality of

termination of "prevailing party" status under a two-part "clear error" and "abuse of discretion" standard to determine, first, the causal link between the suit and the relief provided by the defendant and, second, whether the defendant acted wholly gratuitously).

**8.** See *Corder v. Gates,* 947 F.2d 374, 381 (9th Cir.1991) (reviewing district court's refusal to allocate liability for the fee award among multiple defendants); *Koster v. Perales,* 903 F.2d 131, 139 (2d Cir.1990) ("The allocation of fee liability is a matter committed to the district court's discretion and will not be disturbed unless the determination evidences an abuse of discretion."); *Council for Periodical Distribs. Ass'ns v. Evans,* 827 F.2d 1483, 1487 (11th Cir.1987) ("In addition to having discretion on when to apportion fees, district courts also have wide discretion on how to divide liability for fees."); *cf. Anderson v. Flexel, Inc.,* 47 F.3d 243, 251 (7th Cir.1995) (noting, in the context of determining the liability for a fee award under ERISA, that "[d]istrict courts usually have great discretion whether to apportion fees among defendants").

**9.** These range from the relatively simple—dividing fees equally among the defendants, *see, e.g., Stocker,* 819 F.2d at 945–46, 950–51—to the more sophisticated methods of apportionment based on relative culpability, *see, e.g., Crosby,* 683 F.2d at 1075, and of apportionment by the relative time spent litigating against each defendant, *see, e.g., Perales,* 903 F.2d at 139. *See generally, Grendel's Den,* 749 F.2d at 959–60; Mary Frances Durfer et al., COURT AWARDED ATTORNEY FEES para. 17.03 at 17–13 to 17–17.

**10.** *Council for Periodical Distribs. Ass'ns,* 827 F.2d at 1488; *Grendel's Den,* 749 F.2d at 960.

the case in light of the purpose of the [Civil Rights Act]: to permit and encourage plaintiffs to enforce their civil rights").[11]

A second factor to be considered when the injury to the plaintiff is not divisible is the relative responsibility of each defendant. It is frequently appropriate to hold all defendants jointly and severally liable for attorneys' fees in cases in which two or more defendants actively participated in a constitutional violation. *See Koster v. Perales,* 903 F.2d 131, 138 (2d Cir.1990). When this approach is adopted, the court must be careful, however, to do so consistently with the preexisting background of substantive liability rules. *Id.* at 139. However, joint and several liability is not appropriate in every case involving an indivisible injury. *See Council for Periodical Distribs. Ass'ns,* 827 F.2d at 1487. For instance, it may be appropriate for the district court to apportion fees between an active instigator of a wrong and a more passive codefendant who had a more peripheral or ministerial role in the wrong. *See id.*

Third, the district courts' discretion in fashioning a fee award ought to take into consideration other institutional concerns. Prominent among these concerns is the preservation of federalism. This consideration counsels against unnecessary intrusions into the state's own internal methods of allocating financial burdens. Accordingly, and although some degree of intrusion is inevitable in these cases, the district courts must be careful to avoid the unnecessary "tracing back" of liability for the fee award to the appropriate state or local tax fund. *See Venuti,* 702 F.2d at 8. As Justice (then Circuit Judge) Breyer pointed out in *Venuti,* consideration of this policy concern is not always in tension with the fulfillment of the purposes of the Act.

> [T]he practical difficulties that would accompany any requirement that courts trace the cost dollar back to the most appropriate "tax pot" suggest that Congress had no such legal rule in mind. The state can more easily provide for appropriate shifting of financial burdens when it enacts indemnification statutes.

*Id.* In short, avoiding the "practical difficulties" that might hamper the administration of section 1988 can also keep the court clear of interference with local decisions on matters of state tax policy and contribution.

Finally, the district court "should make every effort to achieve the most fair and sensible solution that is possible," *Grendel's Den,* 749 F.2d at 960, and ought to make this assessment without transforming the "consideration of a fee petition [into a] 'second major litigation.'" *Webb v. Dyer County Bd. of Educ.,* 471 U.S. 234, 244 n. 20, 105 S.Ct. 1923, 1929 n. 20, 85 L.Ed.2d 233 (1985) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).

### C.

We turn now to the case before us. Although the other considerations set forth above must constantly cast a cross-light on our inquiry, as the parties recognize in their submissions before us, it is the second consideration (relative responsibility of each defendant) that requires, under the circumstances presented here, the focus of our attention.

At the outset, it is important that we pause and take note of the precise task that this appeal brings to us. The underlying action in this case was an action seeking declaratory and injunctive relief against the enforcement of a state statute that was applicable throughout the State of Illinois. The named defendants were the Attorney General of the State, the Director of Public Health and the State's Attorneys. All of these officers appeared in their official capacities. The district court was asked to enter an order directing them to perform their official duties in conformity to the Constitution of the Unit-

---

11. In conjunction with this inquiry, the district courts may consider the relative ability of each defendant to pay the award. *See Grendel's Den,* 749 F.2d at 960. It is important to note, however, that, although consideration of a defendant's ability to pay may serve the remedial purposes of the Civil Rights Act in some cases, a defendant may not use its inability to pay to insulate itself from liability for the fee award. *See id.* (noting that, although ability to pay is entitled to "relatively little weight," it may point to the same conclusion as the other considerations).

ed States. Because the officers were sued in their official capacities, the liability for attorneys' fees is not their personal liability but the liability of the governmental body of which they are officers. The issue that we must confront, therefore, is whether the district court abused its discretion in determining that the State alone ought to bear the responsibility for the fee award.

■ Liability can be imposed on a governmental entity, and on its officer in his official capacity, only when that governmental entity is the "moving force" behind the constitutional wrong that forms the basis of the suit. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981). Here, the Attorney General of the State and the State Director of Public Health clearly undertook the defense of the challenged amendments on behalf of the state.[12] The State's Attorneys also undertook the defense of the constitutionality of this *state* statute and the *state* policy that it embodied. It is clear that the State's Attorneys, when bringing an action under the criminal laws of the State of Illinois, also are operating as officers of the state. *Ingemunson v. Hedges,* 133 Ill.2d 364, 140 Ill.Dec. 397, 399–400, 549 N.E.2d 1269, 1271–72 (1990). In short, the undertaking was a defense of a state policy by state officers on behalf of the state. The district court certainly committed no abuse of discretion in determining that the "moving force" behind the statute at issue here was the State of Illinois.

In determining that the State of Illinois ought to bear the responsibility for the fee award, the district court certainly in no way

impaired the purposes of § 1988[13] or the concerns of federalism. As the First Circuit noted in *Venuti,* "the practical difficulties that would accompany any requirement that courts trace the cost dollar back to the most appropriate 'tax pot' suggest that Congress had no such legal rule in mind." 702 F.2d at 8. Illinois may allocate among its subdivisions fiscal responsibility for the defense and enforcement of its laws as it sees fit. The district court, charged with the responsibility of effectuating the purpose of § 1988 without conducting a "second major litigation," *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941, committed no abuse of discretion in fixing responsibility on the political entity whose policy was the "moving force" in the litigation and whose officers appeared before it in defense of that statutory policy.

### Conclusion

The district court did not abuse its discretion in its assessment of the fee award. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

12. *See* Ill. Const. art. V, § 15; 15 ILCS 205/4; *see also* Ill.S.Ct.Rule 19(c); *McCrimmon v. Daley,* 418 F.2d 366, 367 (7th Cir.1969); *Doe v. Scott,* 321 F.Supp. 1385 (N.D.Ill.1971), *vacated on other grounds,* 410 U.S. 950, 93 S.Ct. 1410, 35 L.Ed.2d 682 (1973); *Oak Woods Cemetery Ass'n v. Murphy,* 383 Ill. 301, 50 N.E.2d 582 (1943).

13. There is no evidence of record to support the plaintiffs' suggestion that their ability to collect the judgment from Illinois is "uncertain." We cannot conclude that the remedial purposes of the Civil Rights Act are not served adequately by the district court's allocation of the fee award.

We note that a number of courts have upheld the imposition of joint and several liability for a fee award where there existed a question as to whether the fee would be collectible from one of the defendants. *See Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc.,* 727 F.2d 279, 286–87 (3d Cir.1983); *Riddell v. National Democratic Party,* 712 F.2d 165, 168–69 (5th Cir.1983). We need not determine in this case the circumstances, if any, under which it would be appropriate for a district court to reallocate responsibility between a state and its subdivision on this ground.