**UNITED STATES OF AMERICA ex rel. JOHN DOE I and John Doe II, Plaintiff,**

v.

**PENNSYLVANIA BLUE SHIELD, Xact Medicare Service, Inc., Defendant.**

No. 4:CV–96–0611.

United States District Court, M.D. Pennsylvania.

June 16, 1999.

David M. Barasch, United States Attorney, Anne Fiorenza, Assistant United States Attorney, Harrisburg, PA, Michael F. Hertz, Joyce R. Branda, Stanley E. Alderson, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, D.C., for the United States.

Kathleen E. Karelis, Crowell & Moring, LLP, Washington, D.C., Diane M. Tokarsky, McNees, Wallace & Nurick, Harrisburg, PA, for defendant Highmark, Inc.

John M. Humphrey, Rieders, Travis, Humphrey, Harris, Waters & Waffenschmidt, Williamsport, PA, Rita Grant Ndrika, Gardner, Carton & Douglas, Washington, D.C., James J. West, Law Offices, Harrisburg, PA, for relators.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

These related actions were brought by relators Brentley and Linda Hicks under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729–3733, specifically § 3730. Relators filed the first complaint, docketed to No. 4:CV–96–0611, on April 5, 1996. That complaint alleged that defendant Pennsylvania Blue Shield, d/b/a Xact

Medicare Services, now known as High-mark Inc., used "force codes" to by-pass computer audits for claims submitted by Medicare Part B providers. An amended complaint was filed on June 12, 1996.

Relators filed a second complaint, docketed to No. 4:CV–96–1303, on July 12, 1996, alleging that defendant failed to comply with instructions of the Health Care Financing Administration (HCFA) of the Department of Health and Human Services concerning the processing of laboratory claims submitted for treatment of patients with End Stage Renal Disease (ESRD).

In accordance with the False Claims Act, relators filed the complaints under seal and served them on the government, along with "voluntary disclosure statements." The government conducted an investigation which also involved allegations by two other relators who filed complaints against defendant, as well as a problem disclosed to the government by defendant itself.

In the end, the government negotiated, and relators accepted, a global settlement of the claims with defendant for $38,500,-000.00. Of that amount, $14,000,000.00 was attributed to relators' claims, and they were awarded 18% of the recovery, or $2,252,000.00. Relators then paid a contingency fee to their counsel of 40% of the recovery, or $1,008,000.00. It was only after the settlement was accepted by relators that the government formally intervened and moved for dismissal. The dismissal was with prejudice, with the reservation of relators' right to petition for a statutory award of attorney's fees.

On September 25, 1998, relators petitioned the court for the award of attorney's fees. Since defendant opposed the award, an evidentiary hearing was conducted on April 26–28, 1999, and May 11–12, 1999. The request is now ripe for disposition.

## DISCUSSION:

### I. STANDARD

The relevant statute provides that a relator in a successful *qui tam* action "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1). That relators are entitled to reasonable fees and costs is not in dispute. Rather, it is whether the fees claimed by relators are reasonable which is disputed by defendant.

The parties agree that the proper manner for determining the amount of the fees is the "lodestar method," which is the general method for determining reasonable attorney's fees in cases involving fee-shifting statutes. *See, e.g., Marinelli v. City of Erie*, 25 F.Supp.2d 674, 680–681 (W.D.Pa. 1998) (using lodestar method under Americans with Disabilities Act, which incorporates attorney's fees provision of Title VII); *Boykin v. Bloomsburg Univ. of Pennsylvania*, 905 F.Supp. 1335, 1348 (M.D.Pa.1995) (Muir, J.; Conclusion of Law No. 8; fee award against attorney who unreasonably and vexatiously multiplies proceedings under 28 U.S.C. § 1927), *aff'd*, 91 F.3d 122 (3d Cir.1996) (table), *cert. denied sub nom. Mirin v. Eyerly*, 519 U.S. 1078, 117 S.Ct. 739, 136 L.Ed.2d 678 (1997).

The proper application of the lodestar method was recited at length by the Third Circuit in *Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir.1990). The fee applicant has the initial burden of proving that its fee request is reasonable by submitting evidence of the number of hours worked and the hourly rate claimed; multiplying the number of hours by the rate is the starting point. *Id.* at 1183 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The party opposing the fee award then has the burden of challenging the reasonableness of the fee requested, with the challenge

being asserted by affidavit or brief sufficiently specific to give the applicant notice of the challenge. *Id.* (citing *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713 (3d Cir.1989)).

Hours may be excluded if they are not reasonably expended, meaning that they are excessive, redundant, or otherwise unnecessary, that they relate to distinct claims on which the applicant did not succeed, or that the hours are inadequately documented. *Id.* (citing *Hensley* at 433, 440, 103 S.Ct. 1933; *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 919 (3d Cir.1985)). An hourly rate is reasonable if it is consistent with the prevailing market rates in the relevant community. *Id.* (citing *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). This requires an assessment of the experience and skill of the applicant's attorneys and a comparison of their rates to the rates prevailing in the community in which the attorneys practice for similar services provided by attorneys of similar skill, experience, and reputation. *Id.* (citing *Blum* at 895 n. 11, 104 S.Ct. 1541; *Student Public Interest Research Group v. AT & T Bell Laboratories,* 842 F.2d 1436, 1447 (3d Cir.1988)).

Once the court determines the reasonable number of hours expended and the reasonable hourly rate, it multiplies the two to obtain the lodestar, which is presumed to be the reasonable fee. *Id.* (citing *Blum* at 897, 104 S.Ct. 1541). The court then has the discretion to make certain adjustments to the lodestar, the necessity of which must be proven by the party seeking the adjustment. *Id.* (citing *Cunningham v. City of McKeesport,* 753 F.2d 262, 268 (3d Cir.1985), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731, *reinstated,* 807 F.2d 49 (3d Cir.1986), *cert. denied,* 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987)).

The lodestar may be adjusted downward if the lodestar is not reasonable in light of the results obtained, thereby accounting for time spent litigating unsuccessful or partially unsuccessful claims that are related to the successful claims. *Id.* (citing *Hensley* at 434–437, 103 S.Ct. 1933). While there are instances in which an upward adjustment may be appropriate, *id.* at 1183–1184, such are not applicable in this case and are not claimed by relators.

Under federal law regarding fee shifting statutes, time expended by attorneys seeking an award of fees (sometimes called "fees on fees") justifiably may be included in the application and the award. *Polselli v. Nationwide Mutual Fire Insurance Co.,* 126 F.3d 524, 537 (3d Cir.1997) (citing *Prandini v. National Tea Co.,* 585 F.2d 47, 53 (3d Cir.1978); *Public Interest Research Group of New Jersey v. Windall,* 51 F.3d 1179, 1190 (3d Cir.1995)).

## II. PRELIMINARY MATTERS

Based on the applicable standard, a number of the arguments raised by defendant may be rejected summarily.

First, relators met their initial burden of proof by introducing the legal bills and the testimony of counsel that the hours expended were reasonable. Defendant's argument that relators must produce evidence regarding why each hour billed was reasonable simply contradicts the law of the Third Circuit on the lodestar method.

Related arguments are asserted by defendant with respect to certain categories of hours spent by counsel which purportedly are unnecessary. For instance, defendant contends that counsel's hours should have been reduced because the government was conducting a vigorous investigation. Such an assertion is insufficient: defendant must point to specific hours which need not have been expended because the government investigators had performed the task already or would be performing the task.

Defendant also contested the time spent drafting the complaints and disclosure statements prepared by relators pursuant to § 3730(b)(2). No evidence was provided by defendant as to the amount of time the drafting should have taken, although relators responded to the general "too much" objection by providing testimony of a *qui tam* practitioner that the hours billed were reasonable. Given the complicated nature of the actions and the heightened pleading requirement for complaints alleging fraud, as well as the necessity of preparing the requisite disclosure statements, we cannot say that the hours billed were unreasonable. The same problem exists with respect to defendant's objections to internal consultation within the law firm representing relators, and the amount of time spent on the telephone by counsel consulting among themselves, with government counsel, and with relators individually.

Defendant seeks a 25% reduction in the travel time billed by relators' counsel. Relators have withdrawn claimed fees representing duplicate billings when multiple attorneys attended meetings, which would include the travel time. This withdrawal is sufficient to cover the claimed excess.

■ Defendant also makes a general argument of duplicate effort. To the extent this refers to such things as meetings attended by both counsel and local counsel, we see no reason to exclude these hours from the lodestar: the complicated nature of the case makes employment of multiple attorneys proper for such a task. For the sake of comparison, we would not find multiple criminal defense attorneys in a complicated prosecution, such as a capital or RICO case, to be unreasonable. We disagree with defendant's general proposition that it is inherently unreasonable to have more than one attorney involved in such matters as meetings and telephone conferences, and see no basis for excluding hours from the lodestar calculation based on "duplication of effort."

■ Defendant contends that it was unnecessary to consult a litigation expert within the firm employed by relators. Since there was a good chance that the government would choose not to intervene, particularly with respect to the force code complaint, it was reasonable for counsel to prepare for the eventuality that relators would have to pursue the action themselves.

We also disagree with defendant's argument that any hours represented in block billing which cannot be supported in detail should be excluded. Block billing is a common practice which itself saves time in that the attorney summarizes activities rather than detailing every task. While a substantial number of vague entries may be a reason to exclude hours from the lodestar calculation, that a block may have an entry such as "review file" is not a reason to exclude the entire entry. We believe the more appropriate approach would be to look at the entire block, comparing the listed activities and the time spent, and determining whether the hours reasonably correlate to all of the activities performed.

Defendant points to the large number of hours spent on researching various aspects of the False Claims Act by relators' counsel. Again, a general "too much" argument is insufficient, as it is necessary to point to the specific area researched and to provide reasons why the research or the amount of time on the research is unreasonable.

■ Finally, defendant argues that hours are reasonable only if they are spent advancing the government interest, and that hours spent working against the government and the other relators should be excluded from the lodestar. Nothing in § 3730(d)(1) so limits an award of attorney's fees. In fact, this argument is inconsistent with the nature of legal representation: counsel represents relators, not the government. While there may be times when the interests of the relators and the government diverge, or there is otherwise

a conflict or disagreement, this does not mean that fees incurred which relate to such an event are not reasonable. It is collateral litigation against the government, such as a dispute over the appropriate percentage of the proceeds to be awarded to a relator, not every bit of time related to a subject over which the government and the relator have a divergence of interest or opinion, which is excludable.

In this instance, relators claimed that the damages were much greater than the government at first thought likely. While relators' view eventually seemed inflated, the fact is that the government's recovery was considerably greater than its initial estimate. It clearly was reasonable, then, for relators' counsel to attempt to convince the government to change its view. Moreover, the government increased the percentage of the proceeds awarded to relators as part of the overall settlement of the case, not in collateral litigation. We see no basis for reducing the number of hours for purposes of determining the lodestar based on the nature of this work by relators' counsel.

For their part, relators initially claimed that they were entitled to an award of attorney's fees in an amount equal to the contingency fee paid to their counsel. This contention was based on a statement in the legislative history of § 3730 to the effect that most *qui tam* cases would involve counsel with contingency agreements with the relators. Relators seem to have abandoned this position, and we agree with defendant that it may be rejected out of hand. As noted, the Third Circuit employs the lodestar method in statutory fee-shifting cases. Moreover, a single statement in a legislative history is not a part of the statute, and can hardly be said to override the plain language of the statute.

We turn to the relevant facts as established at the evidentiary hearing. In so doing, we address only those facts relevant for purposes of the thirteen areas listed by defendant as being the subjects of challenge, Defendant's Exhibit 4 (Biesecker Report) at 3–4, and which the court is able to extract from defendant's proposed findings of fact and conclusions of law. Most of the latter have been addressed above as being easily rejected. Remaining are arguments concerning hours spent on drafting of False Claims Act memoranda for the government, researching the right to attorney's fees under the False Claims Act, and reviewing documents provided by defendant to the government.

### III. FINDINGS OF FACT

1. These actions, along with two related *qui tam* actions brought by relators Lynn M. Bultena and Susan L. Howell, were resolved in a global settlement agreement between defendant, the government, and all of the relators, said agreement being dated August 12, 1998.

2. Under the terms of the agreement, defendant paid the government $38,500,-000.00, in contrast to an initial government estimate for recovery of $7,000,000.00.

3. That total was allocated by the government as follows: $16 million to Bultena's complaint; $3.2 million to Howell's complaint; $13 million to the Hicks' ESRD claims and $1 million to their Force Code *qui tam* action; $4.8 million to an overpayment issue disclosed by defendant (not a subject of any *qui tam* action); and $500,-000.00 for the government's civil investigative costs.

4. The government in turn paid each of the four relators 18% of their portion of the settlement, as follows: Bultena, $2,880,000.00; relators, $2,252,000.00; and Howell, $576,000.00.

5. Relators never agreed to the government's unilateral allocation of $13,000,-000.00 to their ESRD claim and $1,000,-000.00 to their force code claim, although they did agree to the $14,000,000.00 total.

6. In accordance with the settlement agreement, on September 11, 1998, the court dismissed all four of the qui tam actions with prejudice as to the govern-

ment and relators, with the exception of any claims for attorneys' fees and costs by relators under § 3730(d)(1).

7. The legal bills introduced by relators relating to the underlying *qui tam* litigation reflect a total of $717,115.25 (reflecting 3,427.45 hours at the rates actually charged according to the bills) in incurred legal fees, and $32,352.00 in costs, through September, 1998.

8. During the hearing, relators withdrew $42,744.25 of the claim for fees, representing two of the areas (Administrative Matters and Retaliation Claim) to which defendant raised objections, thereby reducing the claim to $674,371.00, and also withdrew $5,875.00 of the claim for costs.

9. Relators seek an additional $165,987.00 (based on 745.5 hours at the rates charged by the relevant attorneys) in fees associated with pursuing their fee petition, an amount which actually was incurred.

10. The total claimed by relators as the lodestar (i.e., excluding the claim for costs) is $840,358.00.

11. Relators' attorneys were Rita Grant Ndirika, Esquire, of the firm of Gardner, Carton & Douglas, along with other attorneys and support staff of that firm, and James J. West, Esquire, who acted as local counsel.

12. Having been employed previously by the Office of the Inspector General, Ndirika had experience with qui tam and other cases involving fraud by entities in the health care industry, and was familiar with some of the government employees and agents who would be involved in the investigation, as well as the general way in which government agencies/offices function.

13. West is a former Acting U.S. Attorney for the Middle District of Pennsylvania who was familiar with qui tam law, local practice, and the prosecutors and investigators who worked there.

14. Relators have not challenged the reasonableness of the rates charged by relators' attorneys.

15. On April 15, 1996, Ndirika ate lunch with an employee of HCFA and discussed matters related to these cases, i.e. the cost-contracting process employed by HCFA, although the HCFA employee was unaware that such was the purpose of the lunch.

16. Gardner, Carton billed for 7.0 hours ($1,634.20) related to that meal and discussion.

17. Pursuant to an agreement among the parties, when the identity of Brentley Hicks was disclosed to defendant, he was placed on administrative leave with pay by defendant.

18. Gardner, Carton billed for 9.15 hours ($2,220.00) related to the placement of Brentley Hicks on administrative leave, representing the time researching the approach and negotiating the arrangement.

19. When an attorney named Main left Gardner, Carton to join a firm representing defendant, Gardner, Carton billed 62.65 hours ($11,428.50) for research into the ramifications of a possible conflict of interest.

20. Gardner, Carton billed 40.90 hours ($8,680.50) for research into the effect of defendant's merger on its potential liability.

21. Gardner, Carton billed 3.75 hours ($843.75) relating to defendant's voluntary disclosure.

22. These hours represented time spent by counsel relating to providing copies of documents assembled by Brentley Hicks so that the government could compare those documents to what it received in response to subpoenas issued to defendant.

23. The time spent for purposes of assessing the completeness of defendant's voluntary disclosure was responsive to a request from the government.

24. Gardner, Carton billed for 168.90 hours ($24,783.35) on research on relators' right to recover attorney's fees and preparing the application for same.

25. Gardner, Carton billed 18.85 hours ($5,753.00) relating to potential criminal liability on the part of Linda Hicks.

26. Of that time, only about 0.25 hours was spent actually discussing potential criminal liability with government investigators, who discounted the possibility.

27. Since resigning as the manager of Xact's Fraud and Abuse Department, Linda Hicks has been engaged in a consulting business, assisting Medicare providers under investigation by Xact for possible submission of fraudulent claims.

28. On March 17, 1997, Linda Hicks met with representatives of the Federal Public Defender's Office in Delaware (FPD) to discuss the possibility of consulting as an expert witness on a Medicare case involving allegations of wrongful billing for ambulance services by a billing company represented by the FPD.

29. At that meeting, Linda Hicks specifically identified, and recommended use of, certain documents in the possession of Xact.

30. When the FPD sought to call her as a witness at trial, Linda Hicks determined that she had conflicts of interest that barred her testifying in the case as an expert or otherwise for the defense.

31. West was concerned that a government lawyer might impeach Linda Hicks with the fact that she had filed a qui tam action, thereby revealing the sealed case.

32. West's and GC & D's legal bills identify 17.45 hours ($3,639.00) devoted to corresponding with the FPD and drafting the motion to quash.

33. Gardner, Carton billed 95.40 ($16,540.50) hours for time spent dealing with the other relators.

34. Those hours represent time spent conferring with the other relators for the purpose of presenting a "united front" to the government and defendant, as well as the time doing so.

35. Gardner, Carton billed 2.20 ($209.00) hours relating to determining relators' share of the settlement, representing work done mostly by paralegals.

36. Gardner Carton billed 121.35 hours ($28,145.00) relating to review of a sample audit performed by the government for the purpose of determining the value of relators' claims.

37. Some of the hours attributed to the sample audit were spent researching Privacy Act problems and resolving the problems with the government.

38. Relators' counsel billed 12 hours representing a meeting in Baltimore between Ndirika and West for the purpose of exchanging a document to be filed in Harrisburg and to become reacquainted.

## IV. CONCLUSIONS OF LAW

1. The *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, permit, in certain circumstances, suits by private parties on behalf of the United States.

11. The False Claims Act also provides that relators may recover "an amount for reasonable expenses, which the court finds to have been reasonably incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1).

12. Calculating the amount of counsel fees to be imposed begins with the lodestar, an amount calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate.

13. Adjustments to the lodestar then may be made as necessary in the particular case.

14. Time spent on matters unrelated to successful claims are excluded from the lodestar.

15. The fees incurred by Ndirika with respect to the lunch with an employee of HCFA were reasonable.

16. The fees incurred by relators' counsel with respect to the placement of Brentley Hicks on administrative leave were reasonable.

17. The fees incurred by relators' counsel with respect to a conflict of interest on the part of Attorney Main were not reasonable since:

(a) the number of hours spent on this issue, 62.65, represents more than one and one-half weeks (assuming a 40–hour week) of work on the question;

(b) the issue is not complicated; and

(c) Gardner, Carton simply had to provide notice to Attorney Main that there was a court order barring disclosure of any information concerning these qui tam cases and that such disclosure would constitute a violation of the Rules of Professional Conduct.

18. A reasonable amount of time to be spent on providing notice as described in ¶ 17(c), above, would be one hour.

19. It would be reasonable for Ndirika to provide the notice to emphasize its importance, and could be billed at $245.00.

20. It was not reasonable for relators' counsel to incur fees related to defendant's merger because:

(a) the issue is a matter of fundamental, corporate "successor liability" law; and

(b) defendant never attempted to avoid liability based on its status as successor in interest.

21. It was reasonable for relators' counsel to incur fees relating to defendant's voluntary disclosure, particularly when this activity was undertaken at the request of the government.

22. It was not reasonable for relator's counsel to incur the amount of fees for a large number of hours of research into the right to recover attorney's fees because:

(a) the right to recover fees is stated plainly in the statute;

(b) the right to recover is clearly established;

(c) the manner of requesting fees is set forth clearly in Fed.R.Civ.P. 54(d)(2); and

(d) experts in the qui tam provisions of the False Claims Act should not need extensive research into the right to recover attorney's fees, particularly before a specific challenge to claimed fees is raised.

23. A reasonable amount of time to calculate all of the fees, including a review of bills for the purpose of ensuring that particular fees are to be claimed, and for preparation of a fee petition would be approximately 20 hours.

24. It would be reasonable for Ndirika to prepare the fee petition, given her extensive involvement in the case, at her claimed fee of $245.00 per hour.

25. It was not reasonable for relators' counsel to incur fees related to potential criminal liability on the part of Linda Hicks because there was no indication that the government intended to pursue criminal charges and it indicated immediately that charges would not be pursued.

26. The 0.25 hours spent consulting with the government on the potential for criminal charges against Linda Hicks was reasonable.

25. It was not reasonable for relators' counsel to incur fees in this case related to the motion to quash the subpoena of Linda Hicks by the FPD in Delaware because the subpoena arose from Linda Hicks' pursuit of her new career, so that the event was at best only tangentially related to these proceedings.

26. It was reasonable for relators' counsel to incur fees related to dealing with the other relators as it promoted the global settlement of the case.

27. It was reasonable for relators' counsel to incur the minimal fees reflected in the bills for the purpose of evaluating

and recovering relators' share of the proceeds.

28. It was not reasonable for relators' counsel to incur fees for the meeting in Baltimore as counsel had met previously, could consult by telephone, and could have met for the purpose of becoming reacquainted during any of the numerous trips made to Harrisburg.

29. It was reasonable for relators' counsel to incur fees for the drafting of False Claims Act memoranda at the request of the government. ·

30. The amount of the costs claimed by relators, excluding the amount withdrawn during the hearing, is reasonable.

31. It was reasonable for relators' counsel to pursue the petition for attorney's fees.

32. The hours and amount of fees incurred pursuing the fee petition were reasonable.

██ 33. Relators are entitled to an award of the fees incurred while pursuing the petition for attorney's fees.

## V. OTHER MATTERS

During the hearing, as well as in its brief in opposition to the petition for fees and in its proposed findings of fact and conclusions of law, defendant dwells at length on the fact that counsel for the other relators, Bultena and Howell, incurred significantly less in fees. We find that such a comparison is inappropriate.

The activities of counsel for the other relators is not before the court. Thus, it is not clear that counsel for Bultena and Howell engaged in the same tasks as counsel for relators. Defendant relies heavily on statements by members of the U.S. Attorney's Office concerning the contribution of the various relators to the effect that they essentially were the same. That view, however, is reflected in the government's allocation of 18% of the proceeds to each relator and is unrelated to the question of attorney's fees. Moreover, it is not

clear that the government made the same requests of Bultena and/or Howell as were made of relators and their counsel, or that the claims in the other cases required as much educating of government personnel as relators' ESRD and force code claims. In other words, without a clearer picture of what occurred in those cases, the court cannot undertake to determine whether equivalent work was required in those cases.

It also should be noted that the statements by government counsel are conclusory, and no explanation of why the contributions were equivalent is provided. Such conclusory statements do not provide a basis for excluding hours from the lodestar.

We conclude then, that the following changes should be made in the lodestar calculation:

(1) exclusion of 61.65 hours for the conflict of interest issue (allowing 1 hour as opposed to 62.65 hours);

(2) exclusion of 40.90 hours for research into the effect of defendant's merger;

(3) exclusion of 148.90 hours for research into attorney's fees and preparation of the petition (allowing 20 hours as opposed to 168.90 hours);

(4) exclusion of 18.60 hours for research into the potential criminal liability on the part of Linda Hicks (allowing 0.25 hours as opposed to 18.85 hours);

(5) exclusion of 17.45 hours related to the motion to quash the subpoena of Linda Hicks; and

(6) exclusion of 12 hours for the meeting by counsel in Baltimore.

These exclusions result in the following, corresponding deductions from relators' claimed lodestar:

(1) subtract 61.65 hours and $11,183.50;

(2) subtract 40.90 hours and $8,680.50;

(3) subtract 148.90 hours and $19,883.35;

(4) subtract 18.60 hours and $5,691.75;

(5) subtract 17.45 hours and $3,639.00;

(6) subtract 12 hours and $2,700.00

TOTAL: 299.5 hours and $51,778.10 (to be subtracted).

Thus, the lodestar may be calculated as follows:

| Claimed: | Fees | Hours |
|---|---|---|
| To 9/98: | $674,371.00 | 3,116.45 [1] |
| After 9/98: | $165,987.00 | 745.5 |
| TOTAL: | $840,358.00 | 3,861.95 |
| Less Adjustments: | | |
| | $ 51,778.10 | 299.5 |
| Net Due: | $788,579.90 | 3,562.45 |

1. Representing the 3427.45 hours claimed by relators' counsel less approximately 311 hours related to the withdrawn fees.

The figure representing the lodestar is $788,579.90, and defendant will be directed to pay such to relators.

█ Defendant contends that the lodestar should be adjusted due to the amended fee agreement between relators and their counsel based on the Ninth Circuit's decision in *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equipment, Inc.*, 89 F.3d 574 (9th Cir.1996), *cert. denied*, 519 U.S. 1109, 117 S.Ct. 945, 136 L.Ed.2d 834 (1997). That opinion recites a great deal about the purpose of fee shifting, what party (relators or their counsel) actually have standing to determine what will be done with the fees, etc., all of which makes for an interesting academic exercise. Not only is *Virani* not binding on this court, it is not persuasive. The plain language of § 3730(d)(1) requires that the court order defendant to pay reasonable attorney's fees to relators, and that is what will occur. That the court should concern itself with the final recipient of the funds is not a matter addressed by the statute.

Another general principle we have rejected is defendant's insistence on comparing the amount of the fees incurred to the purported recovery in each case. That is, defendant contends that the fees are disproportionate to the $1,000,000.00 attributed to relators' force code complaint. Actually, the total recovery was $14,000,000.00, and we see no need to break down the recovery into individual components, particularly when the attribution was imposed by the government alone, with no input or acceptance by relators.

Finally, we turn to defendant's expert in legal bills. A reading of our findings of fact shows that we have rejected much of the methodology employed by the expert. As discussed in the "Preliminary Matters" portion of this memorandum, the general categories about which defendant complains are, for the most part, not properly excludable. To the extent that some of these hours are excluded, we have used the hours to which Ndirika testified, finding that testimony of the person who actually did the work to be more accurate than a statistical model. We note also that the "Efficiency Analysis" provided by defendant through its expert is of no value in this context: "inefficient" does not mean "unreasonable." We therefore have used the testimony of defendant's expert for very little. Of course, we therefore have used the rebuttal testimony by relators' experts for very little, as well.

## VI. CONCLUSION

Defendant will be directed to pay to relators reasonable attorney's fees pursuant to § 3730(d)(1) in the amount of $788,579.90, and costs in the amount of $26,477.00. An order consistent with this memorandum will issue.